Argued and submitted September 20, remanded for reconsideration
November 22, 1995

In the Matter of the Marriage of

Sherry Diane ADCOCK,
nka Sherry D. Ratcliff,
*Appellant,*

*and*

Richard Jay ADCOCK,
*Respondent.*

(D13-427; CA A86495)

905 P2d 1185

JoAnn B. Reynolds argued the cause for appellant. With her on the brief was Bennett & Hartman.

Jaqueline L. Koch argued the cause for respondent. With her on the brief was Findling & Johnson.

Before Edmonds, Presiding Judge, and Haselton and Armstrong, Judges.

EDMONDS, P. J.

### EDMONDS, P. J.

Mother appeals from a judgment modifying father's child support obligation arising from a judgment of dissolution of marriage. ORS 107.135. She argues that the trial court erred in finding that father earned $6,200 per month ($74,400 per year), and thereby establishing child support in the amount of $658 per month,[1] when the evidence demonstrates that father had consistently earned more than $100,000 per year for the last five years. She also appeals from the trial court's judgment denying her request for an award of attorney fees. On *de novo* review, ORS 19.125(3), we find that the trial court erred in calculating father's income and remand for reconsideration of the child support amount.

The parties' marriage was dissolved in 1979. Pursuant to the last modification of the child support amount before the one under review, father had been paying $312.50 per month in child support. In July 1994, mother moved to modify father's child support obligation. The trial court granted the motion and established the amount of child support based on the Oregon Child Support Guidelines. The amount awarded was based on the trial court's finding about father's income, which is the only contested factual issue before us.[2]

Father is a vice president of a mortgage company. According to his testimony, he has maintained a base salary for the past several years of approximately $55,000 per year. Historically, his income includes approximately $12,000 per year in commissions, $4,800 per year for an automobile allowance, and quarterly company bonuses. Father's income tax returns from 1988 to 1993 list the following approximate income: $111,180 in 1988; $113,441 in 1989; $124,408 in 1990; $97,888 in 1991; $158,200 in 1992; and $167,417 in 1993. At the time of the hearing on mother's motion to modify the support amount, father had earnings through September 1994 of $84,552. Even if he receives no further bonuses for the year, father will have earned approximately $102,000 in 1994.

---

[1] At the time of the judgment of dissolution, mother and father had two minor children. The older child has since turned 21.

[2] Mother's income is not in dispute. She earns approximately $10,000 per year as a housekeeper.

■     Father maintains that his year-to-date earnings do not reflect his current income. Approximately $26,000 of his 1994 earnings are derived from a first quarter company bonus earned in 1993. The first quarter bonus was for sale closings that occurred in October, November and December 1993, when the company had higher-than-normal profitability. The profitability was due to low interest rates, which created a greater market for mortgages for father's company. In the second quarter of 1994, father received a $2,000 bonus, and in the third quarter he received no bonus income. Father testified that his bonuses in 1992 and 1993 accounted for most of his income for those years and that they were also attributable to the low interest rates and the resulting market. He further testified that the refinancing market at the time of trial was nonexistent and that he did not expect to receive further bonuses.[3] Mother counters that the trial court's decision establishing father's income at $6,200 per month and child support at $658 per month is based on father's speculation about his future income and not on the historic evidence about his earnings.

The calculation of income for purposes of establishing a child support obligation is governed by the rules established by the Support Enforcement Division. ORS 25.275 directs the division to consider several factors in establishing its rules, including:

"(a)   All earnings, income and resources of each parent, including real and personal property; [and]

"(b)   The earnings history and potential of each parent[.]" ORS 25.275(1).

Pursuant to the statute, the division has defined gross income to include

"income from any source, including but not limited to salaries, wages, commissions, advances, *bonuses*, dividends, severance pay, pensions, interest, honoraria, trust income, annuities, return on capital, social security benefits, * * *." OAR 137-50-340(1) (emphasis supplied).

The Division further requires that parents provide documentation of "both current and *past* income where available."

---

[3] Father testified that in December 1993, his offices closed over $9 million in sales. In contrast, in September 1994, his offices closed about $4 million in sales.

OAR 137-50-370 (emphasis supplied); *see also Christensen and Christensen*, 123 Or App 412, 415, 859 P2d 1192 (1993) (holding that the court may take into account the record of a party's earnings, his or her work history and other factors in determining a person's earning capacity).

In the light of those provisions, we disagree with father that his bonus income should not be considered. Father has consistently received an annual income for the last five years that has included more than $30,000 per year in bonuses. The bonuses received in 1994 will be at least $28,000. "Gross income may be calculated on either an annual or monthly basis." OAR 137-50-340(2). Even if father were to receive no further bonuses in 1994, he will have received approximately $102,000 in income from his base salary, commissions, current bonuses and automobile allowance.[4]

Moreover, we are not persuaded by the evidence that father's earning potential for the future is diminished. He acknowledges that his company is in the process of opening new markets, such as a new construction loan market, to substitute for the existing markets that have dwindled in productivity. Furthermore, father's spending habits over the last year belie his position that his income has permanently decreased. In September 1993, he sold a residence for $148,000 and bought another residence for $220,000. He continues to maintain his former lifestyle, has used up his entire savings, and now uses credit cards to maintain that lifestyle. Those facts are evidence that father, knowledgeable about financial matters, believes that his loss of income is temporary and that he will be able to fund his lifestyle over time.

We conclude that the trial court erred in setting father's income at $6,200 per month and remand the case to the trial court to reconsider the amount of child support on the basis that he earned $102,000 in 1994. Because it appears from the circumstances surrounding the trial court's denial

---

[4] OAR 137-50-350(2) provides:

"Expense reimbursements or in-kind payments received by a parent in the course of employment * * * shall be counted as income if they are significant and reduce personal living expenses."

of attorney fees that the trial court based its decision in part on mother's rejection of father's settlement offer and on the amount of support actually awarded, we remand that issue to the trial court for reconsideration also.

Remanded for reconsideration of child support and attorney fees. Costs to wife.